Morgan E. Pietz (SBN 260629)
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone:   (310) 424-5557
Facsimile :   (310) 546-5301

Attorney for: Putative John Doe in 3:12-cv-4976-JSW

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INGENUITY 13 LLC,<br><br>     Plaintiff,<br><br>     v.<br><br>JOHN DOE,<br><br>     Defendant. | 3:2012-cv-04976-JSW<br><br>Assigned to:  Hon. Jeffrey S. White<br><br>**PUTATIVE JOHN DOE'S *EX PARTE* APPLICATION FOR LEAVE TO TAKE LIMITED DISCOVERY PRIOR TO RULE 26(f) CONFERENCE REGARDING ALAN COOPER AND TO STAY SUBPOENA RETURN DATE** |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL**

    **PLEASE TAKE NOTICE** that the putative John Doe in 3:12-cv-4976-JSW ("Movant"), by and through counsel, hereby applies to the Court *ex parte* for leave to take limited discovery prior to the Rule 26(f) conference, and to stay the subpoena return date on the outstanding ISP subpoena seeking Movant's identity.  This motion is made on the ground that "good cause" exists to authorize the limited discovery requested, per Rule 26(d)(1), because, very recently, deeply troubling factual allegations have been made which suggest the plaintiff is engaged in a widespread and systemic fraud on the Courts affecting thousands of ISP subscribers.  Specifically, very troubling questions have been raised as to whether Prenda Law, Inc., has misappropriated the identity of one Mr. Alan Cooper of Minnesota, holding him out in federal court filings as the principal of plaintiff Ingenuity 13, a shell entity organized in St. Kitts and Nevis, without Mr. Cooper's

knowledge or consent.  For weeks, undersigned counsel, and others, have sought answers from Prenda Law, Inc. and its clients AF Holdings, LLC and Ingenuity 13, LLC, to try and put these concerns to rest.  None of the answers proffered to date have been at all reassuring; to the extent Prenda has engaged on the issue at all, the only answers provided have been evasive to a degree that is almost comical.

**(a)      A Very Limited Amount of Early Written Discovery is Appropriate in Light of Certain Facts Averred by One Alan Cooper of Minnesota, which Suggest Possible Systemic Fraud, Perjury, Identity Theft, and Lack of Standing**

Until there is some kind of reasonable explanation from the Plaintiff showing that this case is ***not*** actually part of a widespread, systemic fraud, the subpoena return date in this case (and in all related cases)[1] should be stayed, so the Court plays no part in furthering what has been described by some federal Judges as an "essentially an extortion scheme". *Malibu Media v. John Does 1-10*, C.D. Cal. Case No. 12-cv-3623-ODW-PJW, Dkt. No. 7, 6/27/12; *see also* Fed. R. Civ. Proc. 1 (requiring that the federal rules "should be construed and administered to secure the ***just***, speedy and inexpensive determination of every action and proceeding.")

If Prenda Law would simply identify the "Alan Cooper" who it claims is the true principal of Ingenuity 13, LLC and AF Holdings, LLC, or ***even confirm that such a person actually exists*** (notwithstanding the allegations of Alan Cooper of Minnesota), this *ex parte* application would not be necessary.  Essentially, whether or not there is another Alan Cooper is the million-dollar question.  However, Prenda Law has explicitly stated that it will not address any of the troubling factual circumstances raised by Mr. Cooper, or answer any questions on this topic, unless it is compelled to do so.

Accordingly, Movant respectfully requests leave of Court to propound the following limited written discovery, prior to a Rule 26(f) conference:

---

[1] On December 13, 2012, Movant here filed "John Doe's Administrative Motion to Relate Cases" in the low-numbered Prenda Law case in this district: *AF Holdings, LLC v. John Doe, et al.*, N.D. Cal. Case No. 4:2012-cv-02049-PJH, ECF No. 40.

**PUTATIVE JOHN DOE'S *EX PARTE* APPLICATION FOR LEAVE
TO TAKE LIMITED DISCOVERY PRIOR TO RULE 26(f) CONFERENCE REGARDING ALAN COOPER
AND TO STAY SUBPOENA RETURN DATE**

**(b)      Proposed Special Interrogatories**

First Special Interrogatory: Other than the Alan Cooper of Minnesota who is represented by attorney Paul Godfread, is there another Alan Cooper who is currently the principal[2] of Ingenuity 13, LLC—yes or no?

Second Special Interrogatory: If the answer to the first interrogatory is yes, state all contact information for this Alan Cooper, including current home address, business address, and telephone number.

Third Special Interrogatory: Other than the Alan Cooper of Minnesota who is represented by attorney Paul Godfread, was there ever another Alan Cooper who was, in the past, the principal of Ingenuity 13, LLC—yes or no?

Fourth Special Interrogatory: If the answer to the third interrogatory is yes, state all contact information for this Alan Cooper, including all known home addresses, business addresses, and telephone numbers.

Fifth Special Interrogatory: Other than the Alan Cooper of Minnesota who is represented by attorney Paul Godfread, is there another Alan Cooper who is currently the principal of AF Holdings, LLC—yes or no?

Sixth Special Interrogatory: If the answer to the fifth interrogatory is yes, state all contact information for this Alan Cooper, including current home address, business address, and telephone number.

Seventh Special Interrogatory: Other than the Alan Cooper of Minnesota who is represented by attorney Paul Godfread, was there ever another Alan Cooper who was, in the past, the principal of AF Holdings, LLC—yes or no?

Eighth Special Interrogatory: If the answer to the seventh interrogatory is yes, state all contact information for this Alan Cooper, including all known home addresses, business addresses, and telephone numbers.

Ninth Special Interrogatory: If the answer to the third interrogatory is yes, state each position this Alan Cooper held at Ingenuity 13, LLC and the date such position was held.

---

[2] "principal" will be defined broadly to mean officer, director, manager, member, etc.

**PUTATIVE JOHN DOE'S *EX PARTE* APPLICATION FOR LEAVE
TO TAKE LIMITED DISCOVERY PRIOR TO RULE 26(f) CONFERENCE REGARDING ALAN COOPER
AND TO STAY SUBPOENA RETURN DATE**

Tenth Special Interrogatory: If the answer to the seventh interrogatory is yes, state each position this Alan Cooper held at AF Holdings, LLC and the date such position was held.

Eleventh Special Interrogatory: Was the Alan Cooper of Minnesota who is represented by attorney Paul Godfread ever a principal, even unwittingly, of Ingenuity 13, LLC?

Twelfth Special Interrogatory: Was the Alan Cooper of Minnesota who is represented by attorney Paul Godfread ever a principal, even unwittingly, of AF Holdings, LLC?

Thirteenth Special Interrogatory: On November 26, 2012, when undersigned counsel emailed Brett Gibbs to ask for a routine extension request, Mr. Gibbs responded by email "I would have to check with our client about that request.  Just an FYI, our client usually does not like to grant these types of requests on short notice unless there is a reasonable chance that settlement may occur in the case."  Later, Mr. Gibbs purported to have an answer on his query to the "client" regarding an extension.  Who is the client contact at Ingenuity 13, LLC that Mr. Gibbs spoke with on this matter?  Note, no details of the communication are being requested, just the name of the client contact.

Fourteenth Special Interrogatory: Reference is made to the following civil actions filed by AF Holdings, LLC and Ingenuity 13, LLC in the Northern District of California: 4:2012-cv-02049-PJH; 3:2012-cv-02393-CRB; 5:2012-cv-02394-LHK; 3:2012-cv-02396-EMC; 3:2012-cv-02404-SC; 4:2012-cv-02411-PJH; 3:2012-cv-02415-CRB; 4:2012-cv-03248-PJH; 3:2012-cv-04218-WHA; 5:2012-cv-04219-LHK; 5:2012-cv-04446-EJD; 5:2012-cv-04447-RMW; 5:2012-cv-04448-EJD; 3:2012-cv-04982-CRB; 3:2012-cv-04216-JSW; 3:2012-cv-04217-RS; 5:2012-cv-04445-LHK; 3:2012-cv-04449-SC; 3:2012-cv-04450-MMC; 3:2012-cv-04976-JSW; 3:2012-cv-04977-WHA; 4:2012-cv-04978-PJH; 5:2012-cv-04979-LHK; 5:2012-cv-04980-EJD; 3:2012-cv-04981-RS.  With respect to the copyright assignments attached to the complaints in these actions, as Exhibit B thereto, which all appear to have a similar signature by "Alan Cooper," please state whether the

person who signed these assignments was the Alan Cooper of Minnesota who is represented by attorney Paul Godfread—yes or no?

Fifteenth Special Interrogatory: If the answer to the fourteenth interrogatory is no, then state all contact information for the person that did sign these documents, including all known home addresses, business addresses, and telephone numbers.

**(c)      Proposed Document Demands**

First Document Demand: For each person you identified in response to special interrogatories one through ten and fifteen, produce this person's government-issued picture identification.

Second Document Demand: For each person you identified in response to special interrogatories two and four, produce all documents or other records evidencing the position(s) this person held at Ingenuity 13, LLC.

Third Document Demand: For each person you identified in response to special interrogatory six and eight, produce all documents or other records evidencing the position(s) this person held at AF Holdings, LLC.

Fourth Document Demand: Produce the original signature of Alan Cooper on the verified petition filed by Mr. Gibbs in *In the Matter of a Petition by Ingenuity 13, LLC*, E.D. Cal. Case No. 2:11-mc-JAM-DAD, ECF No. 1, 10/28/11.[3]

Fifth Document Demand: Reference is made to the following civil actions filed by AF Holdings, LLC and Ingenuity 13, LLC in the Northern District of California: 4:2012-cv-02049-PJH; 3:2012-cv-02393-CRB; 5:2012-cv-02394-LHK; 3:2012-cv-02396-EMC; 3:2012-cv-02404-SC; 4:2012-cv-02411-PJH; 3:2012-cv-02415-CRB; 4:2012-cv-03248-PJH; 3:2012-cv-04218-WHA; 5:2012-cv-04219-LHK; 5:2012-cv-04446-EJD; 5:2012-cv-04447-RMW; 5:2012-cv-04448-EJD; 3:2012-cv-04982-CRB; 3:2012-cv-04216-JSW; 3:2012-cv-04217-RS; 5:2012-cv-04445-LHK; 3:2012-cv-04449-SC; 3:2012-cv-04450-

---

[3] A copy of Ingenuity 13's verified petition executed by "Alan Cooper" is attached as "Exhibit E" to the Letter Mr. Cooper's attorney filed with the Minnesota courts (the complete ECF letter filing from Cooper's attorney is attached hereto as <u>Appendix 1</u>).

MMC; 3:2012-cv-04976-JSW; 3:2012-cv-04977-WHA; 4:2012-cv-04978-PJH; 5:2012-cv-04979-LHK; 5:2012-cv-04980-EJD; 3:2012-cv-04981-RS. With respect to the copyright assignments attached to the complaints in these actions, as Exhibit B thereto, which all appear to have a similar signature by "Alan Cooper," please produce each of the original assignment documents for inspection.

**(d)    There is an Urgent Need for *Ex Parte* Relief, And Regardless of How the Court Rules on John Doe's Early Discovery Request the Subpoena Return Date for the ISP Subpoena Seeking John Doe's Identity Should be Stayed**

Plaintiff Ingenuity 13, LLC sought and obtained leave of court to issue a subpoena to Comcast seeking to identify the billing contact associated with the Internet account which, at the relevant time, was assigned the particular IP address which plaintiff alleges was used to illegally download plaintiff's pornographic movie.

After receiving a subpoena, Comcast checked its records and determined that at the time alleged in the complaint the IP address at issue was assigned to an Internet account paid for by Movant.  Accordingly, Comcast then notified Movant, as the billing contact for this account, that unless Movant takes action to quash or otherwise object to the subpoena **by Friday December 14, 2012**, Comcast will disclose Movant's identity to the plaintiff.

Thus, **the filing of this *ex parte* application today is required in order to preserve Movant's ability to object to the subpoena without the issue being mooted** by Comcast making a disclosure of Movant's identity to plaintiff.[4]  As explained in the accompanying memorandum, there are several meritorious grounds for a motion to quash. However, Movant believes that the Alan Cooper question should be addressed as a threshold issue, in order to ensure that this Court's subpoena power is not used to perpetuate a fraud.  Further, one of the grounds for the motion to quash Movant intends to bring is that the subpoena should be quashed because the complaint cannot withstand a

---

[4] Typically, as long as an application or motion is filed before the ISP's stated objection deadline, and until the Court rules on whatever relief is requested (*i.e.*, this application seeking a stay of the return date, in this case) the ISPs will generally not release the subscriber information.

hypothetical motion to dismiss for lack of standing.[5]  The limited discovery Movant is requesting on the Alan Cooper issue will help determine whether the copyright assignments or other chain of title documents necessary to establish standing under the Copyright Act are fraudulent; in other words, the Alan Cooper issue also goes to standing, which will be a one of the issues addressed in the motion to quash Movant intends to file.

Even if the Court is not inclined to grant John Doe's request for limited pre-service written discovery, Movant would respectfully request that, in the alternative, the Court stay the return date on the subpoena plaintiff issued to Comcast seeking Movant's identity to a date certain (perhaps a 30-day extension), to allow Movant to file a motion to quash by then.  Here, a 30-day stay of the subpoena return would also be beneficial in that the Administrative Motion to Relate Cases filed by undersigned counsel on December 13, 2012, will likely be decided by Judge Hamilton by then.  Since Prenda Law and similar plaintiffs firms generally prefer to try and parcel their highly similar cases out to as many different Judges as possible, a recurring problem in these cases is that after lawyers for John Does become involved and seek to relate the cases, there end up being motions to quash heard before one Judge, only to have all of the cases then transferred to another Judge, which is clearly a waste of resources for both the Court and the parties. Undersigned counsel has been diligently working on this case, attempting to get answers on the Alan Cooper questions, as evidenced by the filing of an Administrative Motion to Relate Cases, filed yesterday December 13, 2012, in 4:2012-cv-02049-PJH, and the attached meet and confer emails.

**(e)       Counsel Have Met and Conferred on These Issues But Counsel for Plaintiff Would Not Stipulate to the Relief Requested and Will Oppose this Application**

Undersigned counsel conferred with plaintiff's counsel Brett Gibbs by both email

---

[5] As explained in the accompanying memorandum, and as will be explained in much greater detail in the forthcoming motion to quash itself, because John Doe file sharing subpoenas implicate a limited First Amendment right to anonymity—albeit a very limited right—the Court is ***required*** to test the merits of the complaint against a hypothetical motion to dismiss before approving the subpoena.

and telephone regarding the issues raised in this application.  A copy of the written meet and confer correspondence on the Alan Cooper issue is attached to the supporting declaration hereto as <u>Appendix 4</u>.

This *ex parte* application is based on this application, the accompanying memorandum of points and authorities in support hereof, the declaration of Morgan E. Pietz and appendices thereto, on the pleadings and records on file in this action, and on any testimony proffered at a hearing on this issue, if any.


Respectfully submitted,

DATED: December 14, 2012                              THE PIETZ LAW FIRM

*/s/ Morgan E. Pietz*

Morgan E. Pietz
THE PIETZ LAW FIRM
Attorney for Putative John Doe(s)
Appearing on Caption

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Ingenuity 13, LLC is a shell entity organized under the laws of laws of the Federation of Saint Kitts and Nevis.  It has filed dozens of copyright infringement cases across the country alleging that ISP subscribers illegally downloaded pornography.  Prenda Law, Inc., which represents Ingenuity 13, LLC as counsel, has filed hundreds of such lawsuits against tens of thousands of John Doe defendants over the last two plus years, on behalf of a variety of pornographer clients.  However, not a single one of the many Prenda Law cases has ever been decided on the merits (other than on default).  In 2011, Judge Koh ordered Prenda to disclose how many of the thousands of people Prenda had sued had it ever actually served.  The answer then was that out of 200 some odd lawsuits against approximately 15,000 John Does, it had served zero (0) people with complaints.[6]

Nevertheless, Prenda has made a small to perhaps medium sized fortune over the past few years collecting "settlements" with ISP subscribers whom it has threatened with suit, accusing them of using the BitTorrent file sharing protocol to illegally download pornography. Prenda has pioneered a new business model that is based on using the Court's subpoena power, and leveraging the social stigma associated with pornography, to shake down ISP subscribers for quick copyright infringement "settlements" of a few thousand dollars each. For the most part, Prenda's business is essentially predicated on a single threat: pay Prenda a few thousand dollars, or Prenda will publicly accuse the ISP subscriber of downloading pornography.

One major problem with this scheme—and this is an issue that Prenda is perpetually dancing around; telling one Court one thing, and another Court something different—is that ISP subscriber does not necessarily equal the actual John Doe defendant.  That is, just

---

[6] *AF Holdings v. Does 1-135*, N.D. Cal. No. 5:11-cv-3336-LHK, ECF No. 43-1, 2/4/12, p 4. ("our records indicate that no defendants have been served in the below-listed cases"). Since this 'emperor has no clothes' moment this spring, Prenda has actually served a few dozen people nationwide, to try and make an example out of them.  As an effective way to shame its adversaries, and as a warning to the thousands of people it threatens with suit, Prenda lists the names of the people it has named or served with pornography lawsuits on its website: http://wefightpiracy.com/suits-against-individuals.php

**PUTATIVE JOHN DOE'S *EX PARTE* APPLICATION FOR LEAVE
TO TAKE LIMITED DISCOVERY PRIOR TO RULE 26(f) CONFERENCE REGARDING ALAN COOPER
AND TO STAY SUBPOENA RETURN DATE**

because someone happens to pay the Internet bill for a household does not mean that person is actually the John Doe infringer who used the IP address to download something illegally.  Particularly when ISP subscribers have open or unencrypted WiFi networks that are not encrypted (i.e., no password is required to join the network), very often, the actual infringer can be a teenage kid next door, or, indeed, anyone with access to the wireless network.

For a time, Prenda was getting away with filing lawsuits, issuing subpoenas, getting lists of names from the ISPs, and then simply putting on a full court press, like a debt collector, to try and collect from ISP subscribers.  Prenda used the full toolkit to try and leverage settlement: threats and harassing calls from "settlement negotiators" working at call centers, robo-calls, etc.  Particularly early on, Prenda would generally just *assume* that whomever happened to pay the Internet bill was the actual defendant, and then threaten this person with a lawsuit accordingly.  When faced with the expense and uncertainty of retaining counsel to contest the case, or paying a few thousand dollars to Prenda avoid having ones name dragged through the mud many people—including many innocent people—chose to simply pay the ransom.

More recently, and with good reason, federal courts have become increasingly skeptical of Prenda's business model.  First, based on jurisdictional and venue concerns, courts put a stop to the big, hundred-Doe or even thousand-Doe lawsuits where Prenda sued John Doe defendants from all over the country in a single action.  Next, Prenda and others started filing multiple defendant lawsuits against groups of Does who all resided in a given judicial district. Courts began throwing these lawsuits out too, rejecting the so-called "swarm joinder" theory, which is now being consistently repudiated by district courts in the Ninth Circuit.  *E.g., Patrick Collins, Inc. v. John Does 1 though 9*, S.D. Cal. Case No. 3:12-cv-1436, ECF No. 23, 11/08/12 ("the majority view among district courts within the Ninth Circuit is that allegations of swarm joinder are alone insufficient for joinder. . . Doe Defendants' alleged conduct therefore lacks the type of "very definite logic relationship" required to permit joinder."); *quoting Bautista v. Los Angeles County*, 216 F.3d 837, 842-

843 (9th Cir. 2000).

The instant case (as well as all the related Ingenuity 13, LLC and AF Holdings, LLC cases) represents the latest incarnation of Prenda's business model: actions against a single John Doe defendant in an appropriate forum, with the increased filing costs passed on to ISP subscribers in the form of higher settlement demands.  However, Judge Wright, of the Central District of California, who was assigned all of the AF Holdings cases pending there, recently zeroed in on precisely what is wrong with these single Doe cases. After all the AF Holdings cases in the Central District were transferred to Judge Wright, he vacated all prior orders authorizing early discovery and issued an order to show cause asking plaintiff to justify why early discovery should be allowed,

> "AF Holdings must demonstrate to the Court, in light of the Court's above discussion,[7] how it would proceed to uncover the identity of the actual infringer once it has obtained subscriber information—given that the actual infringer may be a person entirely unrelated to the subscriber—while also considering how to minimize harassment and embarrassment of innocent citizens."  *AF Holdings LLC v. John Doe*, C.D. Cal. Case No. 12-cv-5709-ODW, ECF No. 9, p. 2, 10/19/12.

Judge Wright is spot-on: until the plaintiff can put forth some kind of credible discovery plan showing how it will go from obtaining ISP subscriber information (who Prenda then simultaneously threatens and seeks to settle with), to identifying actual infringing defendants, the subpoenas are premature.  Although the ISP subpoenas are a *necessary* first

---

[7] The "above discussion" Judge Wright referred to was a discussion of all the reasons it is incorrect to simply assume that an ISP subscriber is the actual defendant.  The subpoenas to the ISPs "may only lead to the person paying for the internet service and not necessarily the actual infringer, who may be a family member, roommate, employee, customer, guest, or even a complete stranger. *Malibu Media LLC v. John Does 1–10*, No. 2:12-cv-01642-RGK-SSx, slip op. at 4 (C.D. Cal. Oct. 10, 2012)." *AF Holdings LLC v. John Doe*, C.D. Cal. Case No. 12-cv-5709-ODW, ECF No. 9, p. 1-2, 10/19/12

step in identifying a defendant, they are not *sufficient* to make it "very likely" that the subpoenas seeking to identify ISP subscribers will result in identification of actual John Doe defendants, as required by *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (early discovery to identify John Does authorized when it is "very likely" to identify actual defendants).  Particularly in light of the potential for abuse in this kind of lawsuit, and Prenda's track record of settling or dismissing most actions without prejudice, the plaintiff should be required to put forward a more complete discovery plan before being allowed to avail itself of the Court's subpoena power.

**(a)      Factual Background Regarding Alan Cooper, Ingenuity 13, and AF Holdings**

Movant believes that Prenda should be compelled to provide some answers on the Alan Cooper issue, and right away, in view of the following facts—all of which seem to suggest a possible pattern whereby current/former close associates of John Steele are being fraudulently held out as corporate representatives of AF Holdings and Ingenuity 13:

(1) There is a gentleman from Minnesota named Alan Cooper who formerly worked as a caretaker on a property owned by John Steele.  Appendix 1; Appendix 2 ¶ 4.

(2) John Steele was the name partner in the predecessor firm to Prenda Law, Inc. and, at least until recently, Mr. Steele clearly remained closely associated with Prenda Law, Inc. *See* Appendix 1, Exhibits A through D.

(3) Mr. Steele has alternatively identified himself as both "of counsel" with Prenda Law (Exhibit A to Appendix 1) and "not an attorney with any law firm" (Appendix 3, pp. 11:25–12:7), depending on who was asking and when.  However, regardless of whatever is Mr. Steele's current story, it appears to the undersigned that Mr. Steele is probably pulling the strings at Prenda Law with respect to its national pornography lawsuit "settlement" business.

(4) Mr. Steele bragged to his caretaker Alan Cooper about a copyright scheme Appendix 1, p 1., and, according to Mr. Cooper "Steele had told me on at least one occasion that if anyone asked about companies that I should call him." Appendix 2, ¶ 8.

(4) After Mr. Cooper became suspicious, and searched online, he found out that Prenda Law had been using the name "Alan Cooper" as the supposed principal of AF Holdings and Ingenuity 13, in various federal court filings, including copyright assignment forms, and verifications filed on behalf of Ingenuity 13 that use an electronic signature for "Alan Cooper." Appendix 1, Exhibit E, page 8 of 8.

(5) Concerned about his potential personal liability in connection with the scores of Ingenuity 13 and AF Holdings copyright infringement lawsuits pending across the country, Mr. Cooper hired a lawyer who asked Prenda Law to confirm that there was another Alan Cooper who is the true principal of AF Holdings and Ingenuity 13, and that the identity of Alan Cooper of Minnesota is not being misappropriated. Appendix 1.

(6) Immediately after Mr. Cooper's attorney filed a notice of appearance on Mr. Cooper's behalf in an AF Holdings case pending in Minnesota, John Steele attempted to call Mr. Cooper multiple times, despite the fact that Mr. Cooper was represented by counsel. Appendix 1.

(7) For about three weeks, Prenda has been dodging the questions asked by Mr. Cooper's attorney, and by the undersigned counsel, about whether there is another Alan Cooper who was the principal of AF Holdings and Ingenuity 13. Prenda refuses to say. Appendix 4.

(8) Undersigned counsel has asked Brett Gibbs, counsel for plaintiff here, to produce a verification allegedly signed by Alan Cooper that Mr. Gibbs purported to have in his possession, under penalty of perjury. Mr. Gibbs has refused to do so. Appendix 4.

(10) At almost the exact same time the Alan Cooper allegations were coming to light, the curtain was pulled back a bit farther on Prenda's operation by a federal Judge in Florida, in an episode that begins to suggest a pattern of deception with respect to who is really behind these lawsuits. In *Sunlust Pictures, Inc. v. Tuan Nguyen*, M.D. Fl. Case No. 8:12-CV-1685-T-35MAP Judge Scriven ordered a principal of Prenda Law, Inc. to attend a hearing on a John Doe motion, and also ordered a principal of Sunlust Pictures, the plaintiff in that action, to attend the hearing as well. (The complete hearing transcript is

attached as <u>Appendix 4</u>). According to the transcript, Prenda's purported "sole principal" Paul Duffy, belatedly notified the Court that he could not attend due to a health issue. After two prior local counsel sought to withdraw from the matter, Prenda placed an advertisement in a local newspaper and obtained a new, third local counsel (hired by plaintiff's counsel here Brett Gibbs) who, after filing a notice of appearance and conferring with defense counsel, almost immediately sought to withdraw.  Sunlust also did not send a principal to the hearing; rather, it sent John Steele's former paralegal, a man named Mark Lutz, as the plaintiff's "corporate representative" for hire.  However, upon questioning Mr. Lutz, Judge Scriven quickly determined that Mr. Lutz had no authority to bind the company, and that he did not know who owned or managed it.  Accordingly, despite a Court order requiring them to do so, neither Prenda Law nor its client Sunlust Pictures sent a principal to the hearing.[8]  Note in particular page 20 of the transcript where Judge Scriven orders the purported "corporate representative" for the plaintiff, Mark Lutz (i.e., John Steele's former paralegal), away from the plaintiff's table and dismisses the case for "failure to present a lawful agent, for attempted fraud on the Court by offering up a person who has no authority to act on behalf of the corporation as its corporate representative" and invites a motion for sanctions.  <u>Appendix 3</u>.

**(b)    Applicable Law**

As correctly noted by the plaintiff in its own brief seeking early discovery, "Courts within the Ninth Circuit use a balancing test to decide whether motions for expedited discovery should be granted. *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273 (N.D. Cal. 2002) (granting expedited discovery under a "balance of hardships" analysis). Under the balancing test standard, a request for expedited discovery should be granted where a moving party can show that its need for expedited discovery outweighs the

---

[8] Coincidentally (?) one person who did attend the hearing: John Steele.  Mr. Steele started out in the gallery and purported not to be involved in the case, but after the Court noticed Mr. Lutz constantly trying to confer with Mr. Steele, the Judge asked Mr. Steele who he was, and then asked him for answers to some of her questions about Sunlust Pictures, which Mr. Steele provided. <u>Appendix 3</u>, p. 18:12-24.

prejudice to the responding party. *Id.* at 276 ("Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."); *see also Texas Guaranteed Student Loan Corp. v. Deepinder Dhindsa*, 2010 U.S. Dist. LEXIS 65753, No. 10-00335 (E.D. Cal. 2010)."

**(c)      The Requested Early Discovery is Relevant to the Issue of Plaintiff's Standing to Sue for Copyright Infringement and is Also Relevant to Uncovering a Possible Fraud on the Court and/or Undisclosed Financial Interests in the Case**

If the copyright assignments executed by "Alan Cooper," or other chain of title documents, turn out to be fraudulent, then plaintiff's standing to sue for copyright infringement is in doubt, at a minimum.

Moreover, "The use of a forged document in defense of a lawsuit prejudices both the opposing party and the judicial system itself. . .A court may use its inherent powers to preserve the integrity of the judicial process and prevent the perpetration of fraud on the court." *Forsberg v. Pefanis*, 261 F.R.D. 694, 702 (N.D. Ga. 2009); *citing Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246, 64 S. Ct. 997, 88 L. Ed. 1250, 1944 Dec. Comm'r Pat. 675 (1944).

As the Ninth Circuit has explained, "It is well settled that dismissal is warranted where. . .a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings: 'courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.'" *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. Cal. 1995); *quoting Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983) (upholding dismissal of complaint pursuant to court's inherent power where plaintiff's denials of material fact were knowingly false); *see also Combs v. Rockwell Int'l Corp.*, 927 F.2d 486 (9th Cir. 1991) (affirming dismissal under the court's inherent power as appropriate sanction for falsifying a deposition), cert. denied, 502 U.S. 859, 116 L. Ed. 2d 138, 112 S. Ct. 176 (1991).

Further, when one considers the averments of Alan Cooper of Minnesota, the

-7-

scenario that makes the most sense is that John Steele and/or Prenda Law are likely the real parties in interest in these cases, but trying to cover their tracks. Accordingly, the Alan Cooper issue is also likely to possible undisclosed pecuniary interests in the outcome of this litigation, as well as to possible improper fee splitting.

**(d)     Prejudice to the Plaintiff Can be Easily Avoided**

Generally, Prenda Law complains that when there are delays in cases like this, it will have difficulty meeting the Rule 4(m) service of process deadline.   To remedy any possible prejudice associated with that issue, Movant would stipulate to a 30-day extension of that deadline.  Indeed, if this lawsuit is allowed to proceed, and Movant's identity is ordered disclosed to Prenda, and Prenda insists on moving forward notwithstanding Rule 11(b)(3), undersigned counsel will urge Movant to waive service.

**(e)     Need for the Requested Discovery Outweighs the Minimal Prejudice to Plaintiff**

Prenda law can moot the early discovery request (if not the request for a stay of the subpoena return date), and put the minds of litigants nationwide at ease by providing a verified response, in its opposition hereto, to a very simple question: is there another Alan Cooper, other than the gentleman in Minnesota, who is or was the principal of Ingenuity 13 and AF Holdings?  By submitting a one-page affidavit in support of its opposition, it could avoid this issue entirely and get the case right back on track.  However, Movant believes that the fact that Prenda has, at least so far, refused to address any of the very troubling circumstances raised by Alan Cooper of Minnesota speaks volumes.

The requested early discovery is narrow in scope, minimally burdensome, can and will be propounded promptly, and is necessary for several reasons: (1) to ensure that a fraud is not being perpetuated, with help of the Court's subpoena power; (2) to address standing issues associated with possible forged chain of title documents; (3) to determine whether the plaintiff's lawyers are actually the undisclosed real parties in interest in this case; (4) to determine whether there is evidence of improper fee splitting.

**(f)      Even if the Court Denies John Doe's Request for Limited Early Discovery, the Court Should Still Order a Brief Stay of the Subpoena Return Date**

Even if the Court is not inclined to grant John Doe's request for limited pre-service written discovery, Movant would respectfully request that, in the alternative, the Court stay the return date on the subpoena plaintiff issued to Comcast seeking Movant's identity to a date certain (perhaps a 30-day extension), to allow Movant to file a motion to quash by then.  Here, a 30-day stay of the subpoena return would also be beneficial in that the Administrative Motion to Relate Cases filed by undersigned counsel on December 13, 2012, will likely be decided by Judge Hamilton by then.  Since Prenda Law and similar plaintiffs firms generally prefer to try and parcel their highly similar cases out to as many different Judges as possible, a recurring problem in these cases is that after lawyers for John Does become involved and seek to relate the cases, there end up being motions to quash heard before one Judge, only to have all of the cases then transferred to another Judge, which is clearly a waste of resources for both the Court and the parties.  Again, as noted above, Movant has no objection to a reasonable continuance of the 4(m) deadline.

**(g)      Conclusion**

For the foregoing reasons, Movant respectfully requests (1) that leave be granted to propound the specific proposed written discovery identified in Movant's ex parte application; (2) that the subpoena return date be stayed until 30-days after verified responses have been submitted to such discovery; or (3) in the alternative, that the subpoena return date be stayed for 30-days from the date of this Court's order, to permit Movant to file a motion to quash the subpoena plaintiff issued to Comcast seeking Movant's identity.

Respectfully submitted,

DATED: December 14, 2012                THE PIETZ LAW FIRM

                                        */s/ Morgan E. Pietz*

                                        Morgan E. Pietz
                                        THE PIETZ LAW FIRM
                                        Attorney for Putative John Doe(s)
                                        Appearing on Caption

## CERTIFICATE OF SERVICE

I hereby certify that on this day, the above document was submitted to the CM/ECF system, which sent notification of such filing(s) to the plaintiff, which is registered for electronic service.

Respectfully submitted:  December 14, 2012     THE PIETZ LAW FIRM
                                               */s/ Morgan E. Pietz*
                                               Morgan E. Pietz
                                               THE PIETZ LAW FIRM
                                               Attorney for Putative John Doe(s)
                                               Appearing on Caption

**PUTATIVE JOHN DOE'S *EX PARTE* APPLICATION FOR LEAVE
TO TAKE LIMITED DISCOVERY PRIOR TO RULE 26(f) CONFERENCE REGARDING ALAN COOPER
AND TO STAY SUBPOENA RETURN DATE**